UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 05-22539-CIV-SEITZ/MCALILEY

CLOVER SYSTEMS, INC.,

    Plaintiff,

v.

ALMAGRAN, S.A. AND ALMAGRAN
CARGO, S.A.,

    Defendants.
_____/

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS

THIS MATTER is before the Court on Defendants' Motion to Dismiss [DE 65, 66]. Defendants seek dismissal for lack of jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), respectively. Having reviewed the motion, the response and the reply thereto, and the entire factual record, Defendants' motion is denied because the Court has personal jurisdiction over Defendants pursuant to Fla. Stat. 48.193(1)(a) and the question of venue is reserved until a determination has been made as to whether the arbitration provision covers the dispute.

**I.    Background**

Plaintiff seeks a declaratory judgment establishing its rights regarding a dispute over lost cargo, including the appropriate forum and applicable law.[1] (Second Amended Complaint ("SAC") ¶¶ 54-65.) Plaintiff Clover Systems, Inc. is a Florida corporation with its principal place

---

[1] The underlying dispute relates to the loss of cargo (cellular phones) while in transit from Dallas, Texas to Medellin, Colombia. On February 23, 2004, Plaintiff and Defendants effectuated arrangements for the shipment on behalf of a customer of Almagran, Colombiamovil, S.A. and a United States based shipper, NOKIA. (SAC ¶¶ 42-44.)

of business in Miami, Florida. Both Defendants Almagran, S.A. ("Almagran") and Almagran Cargo, S.A. ("Almagran Cargo") are foreign corporations, organized and existing under the laws of Colombia. Almagran created Almagran Cargo as part of its business of carrying freight and storage and owns 100% of the Almagran Cargo shares.[2]

The parties began their relationship by executing a contractual agreement in December 1999 (the "Agreement"). Defendants retained Plaintiff in the instant forum to act as a freight forwarder, logistics provider and customs broker in moving cargo from the United States, via Miami, to Columbia. Defendants derived up to 15% of their total annual revenue from their commercial enterprises with Plaintiff.[3]

A. **Personal Jurisdiction**

Plaintiff alleges in the SAC that Defendants had multiple contacts with the instant forum. These contacts include that from 2000 to 2005: (1) Defendants engaged in 1,489 transactions both into and out of the United States; (2) such transactions involved solicitation and derivation of revenue, electronic communications and internet activity in the instant forum; (3) the parties exchanged "hundreds and thousands of e-mails and electronic communications" in order to further business operations; (4) numerous employees and hi-level management for Defendants traveled to

---

[2] Plaintiff asserts that Almagran dominates and controls Almagran Cargo both economically and administratively, and therefore, jurisdiction over either entity is sufficient to confer jurisdiction over the other. (Plaintiff's Response at 1, fn. 1.) In a previous filing in this matter, Defendants acknowledged that Almagran Cargo is Almagran's alter ego. (Reply to Motion to Dismiss, DE 25, at 5.) In such filing, Amalgran attached an affidavit from Maria Mercedes Rozo, Almagran's counsel, that states that (1) Almagran S.A. created Almagran Cargo as an integral and complementary part of [Almagran's] business to carry out freight goods storage activities while Almagran carried out customs activities; (2) both companies have the same legal representative, board of directors, fiscal auditors and offices; and (3) Almagran completely controls Almagran Cargo both economically and administratively. (*Id.* ¶ 6-8.)

[3] Defendants claim that revenues from their relationship with Plaintiff represented *less than 15%* of their total annual sales. (Borrero Aff. ¶ 22.) However, because Defendants do not indicate exactly what percentage of sales such revenues represented, this amount is approximated to be 15%.

the forum to negotiate and facilitate the business relationship with Plaintiff; and (5) Defendants have contracted with numerous Florida based ocean and air carriers for the transportation of goods on behalf of their customers.

To rebut Plaintiff's assertions, Defendants submitted the affidavit of Jaime Castaneda Borrero. Mr. Borrero stated that (1) Defendants do not advertise or solicit customers in the state of Florida; (2) they did not contract with carriers for the shipment of cargo within the U.S. or from the U.S. to Colombia; and (3) Defendants' personnel only made approximately eight trips to Florida from 2000 to 2004. (Borrero Aff. ¶¶ 8, 12, 16, 18, 20.)

To rebut Mr. Borrero's statements, Plaintiff submitted the affidavit of its General Operations Manager, Mabel Villiers, who stated that Plaintiff acted as Defendants' agent as an international transportation specialist, consulting with Almagran in writing, waiting to receive a routing order, which Almagran would provide as a specific written authorization for each and every shipment. (Villiers Aff. ¶¶ 7-8.) Each transaction entailed at least five written communications or written reports with Plaintiff including booking confirmations, shipper letters of instruction, e-mail advice, routing orders, written authorization and additional transport documents, as well as one phone call between Miami and Columbia. (*Id*.) Ms. Villiers also testified that the parties' periodic account reconciliation and profit distribution involved Almagran transferring funds into Plaintiff's bank account at Suntrust Bank in Miami on 101 occasions. (*Id*. ¶¶ 15-16.)

**B.    Venue**

Defendants also argue that venue is not proper because the forum selection clause in the Agreement requires that this dispute be brought in Colombia. The clause, which Defendants rely on, is in the section entitled "Arbitration" and states:

> For all legal purposes arising from or that could arise from this agreement, the parties expressly declare that they choose the city of Medellin (Colombia) as the sole domicile and they submit to Colombian law in the event of litigation or differences in interpreting this document. All disputes arising between Almagran and Clover regarding the interpretation of this agreement, its enforcement, compliance, termination, or the future consequences thereof that may not be amicably settled between the parties, shall be submitted to the decision of an Arbitral Tribunal consisting of two (2) arbitrators, who shall be appointed based on the parties' mutual agreement and in any case by following Colombian legal provisions on the matter. The site of the tribunal shall be the city of Medellin, and the arbitral petition shall be submitted to the Medellin Chamber of Commerce Center of Arbitration and Conciliation. The award issued by the arbitrators shall be in law and the expenses arising from the arbitral proceedings shall be assumed by the losing party.

(SAC, Exh. C.)

## II.     Standard of Review

A court must conduct a two-part inquiry when deciding the issue of personal jurisdiction. *See Future Tech. Today, Inc., v. OSF Healthcare Sys.,* 218 F.3d 1247, 1249 (11th Cir. 2000) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. *Id*. Because Florida law governs the extent of the long-arm statute, federal courts are required to construe the statute in accordance with rulings of the Florida Supreme Court, or if that Supreme Court has not ruled on the matter, Florida's intermediate courts. *Sculptchair*, 94 F.3d at 627 (citing *Cable/Home Commc'n v. Network Prods.*, 902 F.2d 829, 856 (11th Cir. 1990)). Thereafter, if the requirements of the long-arm statute are satisfied, the court must inquire as to "whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Sculptchair*, 94 F.3d at 626 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).

Under Florida law, Plaintiff has the ultimate burden of proving personal jurisdiction. *See Sculptchair*, 94 F.3d at 627. When a defendant raises through evidence a meritorious challenge to personal jurisdiction, the plaintiff must then prove jurisdiction by putting forth his own evidence. *See Sculptchair*, 94 F.3d at 627 (citing *Jet Charter Serv., Inc. v Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990), *cert. denied*, 499 U.S. 937 (1991)). To successfully challenge personal jurisdiction, a defendant cannot rely on conclusory statements but rather must provide specific factual declarations relevant to the court's jurisdictional analysis. *See Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Where the court's jurisdiction has not been established, dismissal under Fed. R. Civ. P. 12(b)(2) is appropriate.

**III.   Analysis**

Defendants claim that the Court does not have personal jurisdiction over the parties and that venue is improper due to a forum selection clause. Plaintiff counters that there are several bases for the Court to assert jurisdiction over Defendants including Fla. Stat. 148.193(1)(a) which provides for jurisdiction where the cause of action arises out of "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state."[4] Plaintiff also contends that exercise of jurisdiction over Defendants will not violate the Due Process Clause of the Fourteenth Amendment. Additionally, Plaintiff claims that venue is proper because the parties' forum selection clause does not cover the instant dispute.

---

[4] Plaintiff also claims that the Court has jurisdiction pursuant to Fla. Stat. 48.193(1)(d) (contracting to insure in the forum), Fla. Stat. 193(1)(g) (breaching a contract within the state), Fla. Stat. 48.193(2) (general jurisdiction) and Fed. R. Civ. P. 4(k)(2) (national contacts rule). Because the Court has jurisdiction pursuant Fla. Stat. 48.193(1)(a), it need not address these alternative arguments.

A.  **Personal Jurisdiction**

   1.  **Almagran and Almagran Cargo are Alter Egos**

Plaintiff claims that because Almagran controls Almagran Cargo, jurisdiction over either entity results in jurisdiction over the other. Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there. *Meier*, 288 F.3d at 1272. If a subsidiary, however, is merely an agent through which the parent company conducts business in a particular jurisdiction, or its separate corporate status is formal only and without any semblance of individual identity, the subsidiary's business will be viewed as that of the parent, and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction. *Id.* This theory of agency is not, however, limited to a parent-subsidiary relationship. *Id.* at 173. Personal jurisdiction over affiliated parties, whether a parent or another related subsidiary, is warranted when the resident corporation acts on behalf of those foreign affiliates. *Id.* Here, Defendants have specifically stated that Amalgran Cargo is the alter ego of Amalgram. Therefore, Defendants shall be treated as one, making it necessary to analyze the contacts of both the entities with the forum collectively to ascertain whether it is appropriate to assert jurisdiction over them.

   2.  **The Court Has Specific Jurisdiction Over Defendants Pursuant To Fla. Stat. 148.193(1)(a)**

Fla. Stat. 148.193(1)(a) states that the courts of this state will have jurisdiction over any matter arising from "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." In order to establish that a non-resident defendant is carrying on a business or business venture in Florida, the court must consider whether the sum of the defendant's collective business activities shows a general course of

business activity in the state for pecuniary benefit. *Sculptchair, Inc.*, 94 F.3d 627-628 (holding that insignificant and sporatic sales efforts of three to five transactions grossing only $3,000 qualified as a general course of business); *see also Bank of Wessington v. Winters Gov't Secs. Corp.*, 361 So. 2d 757, 758-759 (Fla. 4th DCA 1978) (upholding trial court's ruling that engaging in ten separate oral transactions was sufficient for the assertion of jurisdiction under §148.193(1)(a)); *Baker v. Electronics, Inc. v. Pentar Systems*, Inc., 219 F.Supp.2d 1260, 1263 (M.D. Fla. 2002) (holding that engaging in interstate travel and exchanging communications in pursuit of a business venture was sufficient for the court to assert jurisdiction).

Here, Plaintiff has met its burden of demonstrating long-arm jurisdiction under Fla. Stat. 48.193(a) because the dispute arises from Defendants' continuous business activities in the Florida. Defendants have not rebutted Plaintiff's evidence that Defendants (1) have engaged in business activities with Plaintiff, a Florida corporation since December 1999; (2) made regular trips (two per year) into the forum to facilitate its business activities with Plaintiff; (3) transmitted thousands of electronic communications, including telephone calls, into Florida; (4) derived a substantial proportion (15%) of its total revenues from its relationship with Plaintiff in the forum; and (5) wired money on 101 occasions to Plaintiff's Florida-based bank to effectuate the reconciliation of accounts and distribution of profits. Such contacts with the forum, taken collectively, clearly constitute "[o]perating, conducting, engaging in, or carrying on a business or business venture" in Florida for purposes of the statute.

### 3.   Jurisdiction Over Defendants Does Not Offend the Constitution

In addition to satisfying the Florida long-arm statute, a federal court sitting in diversity must ensure that jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Meier*, 288 F.3d at 1274. Due process requires that a non-resident defendant have

certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945).

### a. Minimum Contacts

The Eleventh Circuit utilizes a three-part test for determining whether the minimum contacts requirement has been met: (1) the contacts must be related to the plaintiff's cause of action; (2) they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the state; and (3) the defendant's contacts with the state must be such that the defendant would reasonably anticipate being haled into court there. *Baker*, 219 F.Supp.2d at 1264. The facts set out above demonstrate that Defendants have the requisite minimum contacts with Florida. The business actions of effectuating the delivery of cargo from Texas, via Florida, to Colombia, were specifically directed at a resident Florida corporation and directly related to the instant lawsuit. Therefore, Defendants have purposefully availed themselves to this state. Moreover, Defendants on-going contacts with the State of Florida would provide Defendants with the reasonable anticipation of being haled into this Court if the business relationship with Plaintiff were to go awry. To assert the contrary would bespeak against the notion of minimum contacts.

### b. Fair Play and Substantial Justice

When determining whether the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice," a court must consider such factors as the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. *Baker*, 219 F.Supp.2d at 1264. The burden on these Defendants is not so substantial as to effectuate a dismissal in this case. Defendants found it convenient to travel to Florida every year to further its

business relationship with Plaintiff. Further, Defendants have demonstrated the ability to obtain knowledgeable local counsel who have made several appearances in this matter. Moreover, if this Court were to dismiss this action for lack of jurisdiction, foreign businesses could find comfort in transacting with Florida businesses in Florida without facing the jurisdiction of this Court. It would be contrary to the interests of Plaintiff to allow Defendants to have benefitted from a multi-year business relationship with a Florida corporation and now withstand a lawsuit in this forum. Thus, Plaintiff has shown that haling Defendants into this jurisdiction comports with traditional notions of fair play and substantial justice.

### B.     Venue[5]

Defendants claim that venue is not proper because the Agreement contains a clause which Defendants argue makes Colombia the only proper forum. In the Eleventh Circuit, motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Fed.R.Civ.P. 12(b)(3) as motions to dismiss for improper venue. *Lipcom v. Underwriters at Lloyds, London*, 148 F.3d 1285, 1290 (11th Cir. 1998). When a valid forum selection clause exists, the burden shifts to the party seeking to defeat the agreed upon venue. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). The Eleventh Circuit analyzes forum selection clauses under a "mandatory/permissive" test, enforcing only those clauses that unambiguously designate the forum in which the parties must enforce their rights under the contract. *Florida Polk County v. Prison Health Servs.*, Inc. 170 F.3d 1081, 1084 (11th Cir. 1999).

Here, the purported forum selection clause is ambiguous. It is included within Section 14

---

[5] Defendant Amalgran moved to dismiss the initial Complaint on October 21, 2005. The Court denied Defendants's motion without prejudice because Plaintiff intended to amend its Complaint, but stated that if Defendant "renews the Motion to Dismiss, it may refer back to the arguments made in the initial motion." (*See* DE 28.) Accordingly, the parties have incorporated by reference their arguments regarding venue.

of the Agreement, entitled "Arbitration," which appears to deal with the arbitration of disputes "arising from or that could arise from" the Agreement. This placement of the forum selection clause within Section 14 implies that the parties' designation of a forum only applies to those disputes that are required to be arbitrated. Moreover, this interpretation is bolstered by the fact that the parties used very similar language to define the scope of the forum selection clause, ("arising from ... this agreement") and the arbitration clause, ("arising between ALMAGRAN and CLOVER regarding the interpretation of this agreement"). Consequently, before the Court can determine if venue is proper in light of the forum selection clause, a determination as to whether the dispute is within the scope of the arbitration clause must be made. However, as the parties do not address this issue in the instant motion, the Court shall reserve judgement until it is properly before the Court.

**IV.     Conclusion**

For the reasons set forth herein, it is hereby

ORDERED that Defendants' Motion to Dismiss [DE 65, 66] is DENIED.

DONE AND ORDERED in Miami, Florida this 7th day of June, 2007.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
Counsel of Record